SARA R. FOOTE, Appellant, *vs.* MARY YARLOTT *et al.* Appellees.—SARA R. FOOTE, Appellee, *vs.* MARY YARLOTT *et al.* Appellants.

*Opinion filed December 15, 1908—Rehearing denied Feb. 3, 1909.*

1. APPEALS AND ERRORS—*when order dismissing bill as to one defendant may be reviewed on appeal from final decree.* Where a bill for foreclosure makes a certain party a defendant under the statement that she has or claims to have some interest in the property, and such person files a plea setting out her interest, an order sustaining the plea and dismissing the bill as to her is interlocutory and may be reviewed on appeal from the final decree.

2. MORTGAGES—*when trust deed includes easement of beneficial use of heating plant.* Where the owner of a building, after executing separate trust deeds for the north and south halves of the same, installs a steam heating plant in the north half for the use of the entire building, the advantages and burdens of the arrangement attach to the property, and the trust deed to the south half will include the easement of the beneficial use of that part of the heating plant located in the north half, and the owner of the north half must permit such beneficial use by anyone becoming the owner of the south half under the trust deed.

DUNN, FARMER and VICKERS, JJ., dissenting.

APPEAL from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

HENRY W. LEMAN, and FRANK H. CULVER, for Sara R. Foote.

HERMAN W. STILLMAN, for Nora Marggraf.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

On March 22, 1892, Mary Yarlott owned a lot in Chicago having a frontage of forty feet, on which there was a three-story flat-building of six flats, having its front and rear entrances in the center of the building, one-half of the doors, halls and stairways being on either side of the center

line, and with Edward L. Yarlott she executed notes and
trust deeds, one on each half. She had applied for a loan
of $10,000 upon the entire lot and building, but when the
notes and trust deeds were executed two notes were given,
for $5000 each, at the request of the lender, and one was
secured by a trust deed on the north half and the other by
a trust deed on the south half. The note secured on the
south half became the property of Sara R. Foote and the
note secured on the north half became the property of
Nora Marggraf. About a year after the trust deeds were
executed the owner of the premises put in a steam heating
plant to furnish heat for the entire building. The plant for
generating the steam heat was located on the north half of
the lot, with pipes running therefrom to radiators through-
out the whole building, and the plant was used to heat all
of the six flats. The notes were due in five years, and her
loan having matured, Sara R. Foote extended the time of
payment five years and new interest notes were executed.
Thereafter default was made in payments due, and she de-
clared the whole amount due and filed her bill to foreclose
the trust deed, alleging that the south half of the lot had an
easement for the beneficial use of the heating plant con-
structed to heat the entire building, upon the owner of the
south half paying a fair and reasonable proportion of the
cost of maintaining the same. Nora Marggraf was made
a defendant to the bill under a statement that she had, or
claimed to have, some interest in the property, and she ap-
peared and demurred to the bill. Her demurrer was sus-
tained, but it was afterwards withdrawn on her motion and
the order sustaining it was set aside and she was given leave
to file a plea. She filed her plea, alleging that before the
filing of the bill she purchased the note secured on the north
half of the lot, and that she had purchased said north half
and was the owner of the same. The plea was followed
by a disclaimer of any interest in the note secured on the
south half and a consent to the decree of foreclosure of the

trust deed securing the same. The plea was set down for argument and the court held it sufficient. No replication to the plea was filed, and the court dismissed the bill as to the defendant Nora Marggraf at the cost of the complainant. Other defendants answered and the issues were referred to a master, who reported that the trust deed on the south half was a lien on the easements in the north half claimed by the bill. No objections were made or exceptions filed to the report, but the court expunged from the report the finding of the master as to the easements and entered a decree of foreclosure not including any easement and ordered a sale of the south twenty feet. From that decree Sara R. Foote appealed to the Appellate Court for the First District. Nora Marggraf appeared there and moved to dismiss the appeal for want of jurisdiction, on the ground that a freehold was involved. The motion was denied, and the subsequent history of the case is fully stated in *Foote* v. *Marggraf*, 233 Ill. 48, and *Foote* v. *Yarlott*, 234 id. 560.

The Appellate Court fell into error in entertaining the appeal of Sara R. Foote from a decree finding that she had no easement and in rendering a judgment reversing the decree and remanding the cause to the superior court, with directions to enter a decree in accordance with the views of the Appellate Court on that subject. That judgment of the Appellate Court having been reversed by this court in *Foote* v. *Marggraf*, 233 Ill. 48, and the appeal transferred to this court, the decree entered by the superior court on July 1, 1907, must be reversed. The appeal from that decree is docketed here as No. 6086, and the decree was not the result of any finding by the superior court, but was entered under a mandate of the Appellate Court awarded without jurisdiction. The merits of the case are to be settled in the appeal of Sara R. Foote from the original decree of foreclosure transferred from the Appellate Court to this court and docketed as No. 6085, in which the

substantial and controverted question is the existence of the alleged easement.

It is argued by counsel for Nora Marggraf that the question cannot be considered, for the reason that when her plea was sustained and the bill was dismissed as to her she was no longer before the court or within its jurisdiction; that the order was a final adjudication as to her, and if Sara R. Foote desired to have the order reviewed she should have appealed from it. The order was interlocutory and not appealable, since there can be no appeal until there has been a complete disposition of a cause as to all parties, except where great hardship or a denial of justice will result from not allowing an appeal. This case does not come within that exception and there could be no appeal until the final decree, when the whole record, including the order of dismissal, might be brought up for review. (*Dreyer* v. *Goldy,* 171 Ill. 434; *Pain* v. *Kinney,* 175 id. 264; *Brodhead* v. *Minges,* 198 id. 513.) The only case cited by counsel in support of his position having any relation to the question is *Guyer* v. *Wilson,* 139 Ill. 392. In that case there was a hearing and a final decree disposing of the case on its merits, granting relief against some defendants and dismissing the bill as to others. The cause was referred to a special master to take proof as to the amount of the complainant's deficit upon the policies issued for his benefit and certain other amounts in the nature of an accounting, and when the report was made a decree was entered which again dismissed the bill as to the same parties. In that case the first decree disposed of the rights of the parties and it was final and appealable, and it was, of course, held that the second decree added nothing to it. The question in this case whether the court erred in dismissing the bill as to Nora Marggraf is brought up with the appeal from the final decree, and her counsel says that there was no error because the bill was multifarious in seeking to establish an easement and also to foreclose the trust deed. The demur-

rer alleged that the bill was multifarious, but the demurrer was withdrawn and a plea was filed which presented no defense whatever to the bill. Nora Marggraf had been made a defendant as claiming some interest in the property, and her plea simply stated what her interest was. The court erred in holding the plea good and dismissing the bill as to her.

After the trust deeds were executed, and before the extension of the time of payment, the owner of the property put in the steam heating plant, with its pipes and radiators, to heat the entire building. While it was designed for the benefit of every part of the building, that portion where the steam heat was generated was on the north half. If the plant had been in the building at the time of the making of the trust deeds, an easement for the enjoyment of the heating plant by any one who should become the owner of the south twenty feet upon foreclosure would have passed although not expressly stated, on the principle that when a party grants a thing he grants everything pertaining to it necessary to its enjoyment. The owner could not create any charge or easement on the north half, after the execution of the trust deeds, to the detriment of the owner of that half, but the natural conclusion would be that the installing of the heating plant subject to the right of the owner of the south half to the beneficial use of the same plant constituted an addition to the security as to the north half, and so far as appears that is true. The owner installed the heating plant, which increased the value of both parcels and which was necessary for the convenient and comfortable enjoyment of both, in such a way that the portion of the plant designed to generate the steam heat was on the north half, and the advantages and burdens of the arrangement attached to the property. Even more liberal principles ought to be applied in such a case than in case of the implied reservation sustained in *Powers* v. *Hefferan,* 233 Ill. 597. In our opinion the trust deed includes the easement of the

beneficial use of that part of the heating plant located on the north twenty feet, and the owner of said north twenty feet must permit such beneficial use by any one who may become the owner of the south twenty feet under the trust deed.

It is urged that the court cannot make a contract for the parties as to the manner in which the easement shall be enjoyed nor require the owner of the north half to incur obligations or perform duties in respect to the plant. Whether that is true or not, it does not alter the fact that the owner of the south half has an easement in the heating plant to heat his part of the flat-building in the usual and ordinary way and that the owner of the north twenty feet must permit such use. It is essential to the foreclosure that the extent of the lien of the trust deed should be determined, involving the question of the freehold; but, as a matter of fact, the note may be paid or there may be a redemption, and it is neither necessary nor proper to now determine what duties shall be performed by the owner of either parcel. If any person should become the owner of the south twenty feet under the foreclosure, and a controversy should arise, it can then be settled.

The decree of the superior court entered on July 1, 1907, in pursuance of the mandate of the Appellate Court is reversed. The decree of said court entered on January 15, 1906, is reversed and the cause is remanded to said court, with directions to enter a decree of foreclosure in accordance with the views herein expressed.

*Reversed and remanded.*

DUNN, FARMER and VICKERS, JJ., dissenting:

The following are the facts out of which the controversy in this case grows: The lot is forty feet wide and is covered by a three-story brick and stone flat-building. The building is a double one, having the halls and stairways on the center line, three flats being in the north half

of the building and three in the south half. The building was erected by Edward L. Yarlott and completed in 1892. On March 22, 1892, he and his wife, Mary L. Yarlott, executed their note for $5000, payable to their own order, with six per cent interest thereon, payable semi-annually, and secured the same by a trust deed to Frank R. Chandler, trustee, of the south twenty feet of the lot. On March 23, 1892, Edward L. Yarlott and his wife executed their note for $5000, payable to their own order, secured by a trust deed of the north twenty feet of said lot. The heating plant was put in the building in 1894,—two years after the building was completed and after the mortgages were given. The furnace and boiler were installed in the basement of that part of the building standing upon the north twenty feet of the lot. The heating plant was put in to heat the whole building and was used for that purpose. Sara R. Foote having become the owner of the note secured by the trust deed on the south half of the lot, on default of payment filed her bill for a foreclosure, charging the construction and operation of the heating plant in the manner above described; that the building has been, ever since its erection, owned and operated as one property; that the ownership of the equity of redemption in the whole is in Buckingham Chandler, and that there is a trust deed for $5000 on the north half of the lot. Nora Marggraf was made a party defendant, it being alleged that she is interested or claims an interest in the premises. It is charged that the south twenty feet of the lot has an easement or license and continuous contract with those in possession of the north twenty feet of said lot for the furnishing of heat for the tenants of that part of said building located upon the said south twenty feet as an appurtenance thereto, upon payment of the just, fair and proper proportion of the cost of maintenance and operation of the heating plant.

The easement is claimed to exist by operation of law. In *Martin* v. *Murphy*, 221 Ill. 632, the law on this subject

as administered in this State is said (p. 639) to be clearly expressed in the following from *Lampman* v. *Milks,* 21 N. Y. 505: "The principle is, that where the owner of two tenements sells one of them, or the owner of an entire estate sells a portion, the purchaser takes the tenement or portion sold, with all the benefits and burdens which appear at the time of the sale to belong to it, as between it and the property which the vendor retains. This is one of the recognized modes by which an easement or servitude is created. No easement exists so long as there is a unity of ownership, because the owner of the whole may at any time re-arrange the qualities of the several parts. But the moment a severance occurs by the sale of a part, the right of the owner to re-distribute the properties of the respective portions ceases, and easements or servitudes are created, corresponding to the benefits and burdens mutually existing at the time of the sale." And easements so created become appurtenant to the portions of the property in whose favor they are created and pass by a conveyance of such respective portions of the property, whether mentioned in the deed or not.

The severance of the title occurred in this case at the time of the execution of the two trust deeds, in March, 1892. At that time the heating plant had not been put in, and it does not appear that any arrangement of the property had been made by which one part derived an advantage from the other. There were no benefits or burdens mutually existing at the time and therefore no easements or servitudes were created. The act of the owner of the equity of the redemption after the trust deeds were executed could not affect the estates granted by them. The trust deed of the north half gave to the holder of the note mentioned therein, as security therefor, the north half of the lot free from any incumbrance. The owner could not afterward impose upon such north half the burden of an easement in favor of some other person or some other property. The

trust deed of the south half gave to the holder of the note mentioned therein, as security therefor, the south half of the lot. There were no benefits or burdens appearing at the time of the sale to belong to it and with reference to which it was made. The grantee took the property as it then was, with such appurtenances as then existed, if any, and complainant was entitled to have such property only subjected to sale for the payment of her lien. This relief was granted by the decree of the superior court, and that decree, in our judgment, should be affirmed.